U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the order of the Court.**

**Signed May 19, 2006**

*Barbara J. Houser*

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ANITA ELIZABETH DICK,** | § | **CASE NO. 05-80347-BJH-13** |
| | § | |
| | § | |
| Debtor. | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Reopen Bankruptcy Case for Limited Purpose of Expunging the Records Thereof and Other Relief (the "Motion to Reopen/Expunge") filed by Anita Elizabeth Dick (the "Purported Debtor"). The Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1334. This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, to the extent those are required.

**Background Facts**

Memorandum Opinion and Order

The above-captioned case was commenced by the filing of a petition for relief under Chapter 13 (the "Petition") on September 6, 2005 (the "Case"). The Petition is not signed by an attorney or a bankruptcy petition preparer, but purports to bear the signature of the Purported Debtor. The Petition was filed without a Chapter 13 plan or authorization for pre-confirmation disbursements, as required by the local rules of the Bankruptcy Court for the Northern District of Texas (the "Local Rules"). Those documents have never been filed.

Accompanying the Petition was $50.00 towards the filing fee, along with an application to pay the balance of the filing fee in installments. An order granting the application to pay in installments was entered on September 9, 2005, and directed payment in three installments of $48.00 each, due on October 3, 2005, November 2, 2005, and December 2, 2005, respectively. An installment payment of $50.00 was made on October 6, 2005, but the balance of $94.00 remains owing.

The schedules attached to the Petition disclose that the Purported Debtor owns an interest in a condominium located at 10734 Park Village Place, Dallas, Texas, valued at $120,000.00 and encumbered by liens totaling $115,000.00. *See* Schedule A. Schedule B discloses only $2,970.00 in personal property, comprised of cash, a bank account, household goods, wearing apparel, and jewelry. Oddly, no exemptions are claimed on Schedule C. The only creditors listed on Schedule D are the lienors against the condominium, and Schedules E and F list no creditors.

On October 13, 2005, the standing Chapter 13 Trustee filed and served a Notice of Intent to Certify the Case for Dismissal (the "Notice of Intent") for failure to file documents – *i.e.* the plan and authorization for pre-confirmation disbursements. The meeting pursuant to 11 U.S.C. § 341 was scheduled and held on October 20, 2005, but the Purported Debtor did not attend. The Chapter 13

**Memorandum Opinion and Order** 2

Trustee's Report of Section 341 Meeting shows that he had not been provided with copies of pay stubs or tax returns, as required by the Local Rules. Therefore, the Court entered an order on October 26, 2005 dismissing the Case for the above deficiencies, pursuant to the Notice of Intent and General Order 98-4 of the United States Bankruptcy Court for the Northern District of Texas.

The Chapter 13 Trustee filed his final report on November 15, 2005. The Case was closed on November 28, 2005.

On March 17, 2006, the Purported Debtor filed the Motion to Reopen/Expunge, which is supported by the declaration under penalty of perjury of Anita Elizabeth Dick. She states:

- She first became aware of the Case in February 2006;
- The signatures purporting to be hers on the Petition and schedules are not, in fact, hers and have been forged;
- She did not authorize or consent to the filing of a bankruptcy petition in her name or on her behalf;
- She has recently discovered that her identity has been used for unauthorized charges on her credit cards, such that creditors are contacting her to collect charges which she never made or authorized, and she is the victim of identity theft; and
- The filing of the Case will damage her credit rating and ability to secure credit in the future.

The Motion to Reopen/Expunge requests that this Court destroy or seal all documents filed relating to the Case, disable public electronic access to the Case or, in the alternative, make "prominent notations in the records of this Court that would allow any person . . . to conclude that the instant bankruptcy matter was in fact fraudulent . . . and occurred without the knowledge or consent of the purported Debtor." *Mot. to Reopen/Expunge* ¶ 21. The Purported Debtor also asks that this Court authorize her to "respond in the negative if she should ever be asked, under oath or otherwise, whether she had ever filed for bankruptcy." *Id.* Moreover, the proposed Order submitted with the Motion to Reopen/Expunge directs her to furnish a copy of any Order entered on her motion to the credit reporting agencies, and directs any party receiving a copy of the Order to certify in

writing that it has deleted any reference to the Case and that it will not use the bankruptcy filing in compiling her credit rating or score or for any other purpose. The proposed Order further provides that the Case shall remain open until said certifications are filed.

The Motion to Reopen/Expunge was served on the Chapter 13 Trustee, the U.S. Trustee, the U.S. Attorney, and four creditors, but not on any of the credit reporting agencies. The Court held a hearing on April 20, 2006, at which time the Purported Debtor's newly engaged counsel proffered her testimony, without objection. The Purported Debtor testified that she lives in the condominium and that her former boyfriend, Gary Oseroff (who cannot presently be located) had a key to her condominium and access to her financial information and mail. The Purported Debtor further testified that she is employed by a florist, and as her number of working hours at the florist declined, her former boyfriend offered to help by paying her mortgage on the condominium, which she consented to. She further testified that at some point he fell behind on paying the mortgage and, without her knowledge, took the mail that would have alerted her to the payment default. While she did not testify that she can prove that her former boyfriend is responsible for filing the Case, she stated that he is the only one who had access to her financial and mortgage information and to her social security number. She testified that she believes that he may have filed the Case to prevent foreclosure on the condominium, but was unable to say for certain what his motivation was, if he was, in fact, the person who filed the Petition. Finally, the Purported Debtor testified that she never gave anyone a power of attorney, that she never contemplated filing a petition in bankruptcy, and that she never signed a bankruptcy petition, in blank or otherwise.

Counsel for the mortgagee appeared at the hearing and confirmed that since the Case was dismissed, the mortgagee foreclosed on its lien on the condominium in December of 2005, and that

eviction proceedings are pending.

**Legal Analysis**

Section 350(b) of the Bankruptcy Code authorizes this Court to reopen the Case to "administer assets, accord relief to the debtor, or for other cause." The phrase "other cause" has been interpreted as a "broad term which gives the bankruptcy court discretion to reopen a closed estate or proceeding when cause for such reopening has been shown." *Citizens Bank & Trust. Co. v. Case (In re Case)*, 937 F.2d 1014, 1018 (5th Cir. 1991). The exercise of this discretion depends upon the facts and circumstances of the individual case, and "accords with the equitable nature of all bankruptcy court proceedings." *Id*. The Court concludes, based upon the facts of the Case, that cause exists and the Case must be reopened to "accord relief" to the Purported Debtor.

The Clerk's office maintains, in the ordinary course of its regularly conducted activities, a copy of the identification produced by the person filing a bankruptcy petition where that person is not the debtor named in the petition. The Court may take judicial notice of its own records. *In re Wigley*, 333 B.R. 768 (Bankr. N.D. Tex. 2005) (*citing Sec. & Exch. Comm'n v. First Fin. Group of Tex.*, 645 F.2d 429, 433 n. 6 (5th Cir. 1981).

Here, those records reflect that it was not the Purported Debtor who filed the Petition in the Clerk's office. Rather, the Court has in its files a copy of the driver's license and social security card of Gary Oseroff – indicating that he physically brought the Petition to the Court for filing.[1] In addition, the Case has other characteristics which lend credibility to the Purported Debtor's

---

[1] The Court also has copies of the passport, driver's license, and student identification card of the Purported Debtor. Had she been the one to file the Petition, the Clerk's Office would not have also asked for the identification of Mr. Oseroff. Moreover, the Purported Debtor's signature on the Petition does not appear to be the same as the signatures on the copies of the Purported Debtor's passport, driver's license, and student identification card.

contention that she did not file the Case voluntarily. For example, many of the documents required for a successful case were never filed; nor was the total filing fee paid. While that is true in other cases filed solely to forestall foreclosure, the Court believes it very unlikely that the Purported Debtor would have filed the Case without claiming the condominium as her exempt homestead.

Accordingly, the Case appears to have been filed as the result of "identity theft." As such, the Court can, and should, provide relief to a victim of a fraudulent bankruptcy filing. There is no question that notice of a bankruptcy filing can remain on a consumer's credit report for up to ten years. 15 U.S.C. § 1681c(1)(a) (West 2006). There is also no question that a reported bankruptcy filing can, and will, damage a consumer's credit rating, *See* P. Alexander, *Identity Theft and Bankruptcy Expungement*, 77 Am. Bankr. L.J. 409, 410 (Fall 2003), and can be difficult to remedy where the report is false. *See, e.g. Thompson v. Homecomings Fin'l*, No. 3-05-CV-1800-L, 2005 WL 3534234 (N.D. Tex. Dec. 19, 2005).

At first blush, expunction, the remedy requested by the Purported Debtor, appears to be a reasonable and appropriate remedy in circumstances such as those present here. However, the few courts to have addressed the issue have not agreed on the source of the bankruptcy court's authority to order a bankruptcy filing expunged. *Compare In re Whitener*, 57 B.R. 707 (Bankr. E.D. Va. 1986) (federal courts have inherent power to expunge court records when necessary to preserve basic legal rights, and citing 11 U.S.C. § 107, but declining to order same and instead declaring a petition to be "null and void") *with In re Buppelmann*, 269 B.R.341 (Bankr. M.D. Pa. 2001) (noting that expungement is a rare event exercised with 'with the greatest of prudence' under the equitable powers implied under 11 U.S.C. § 105, but declining to order the remedy and instead directing the Clerk to note in the case that the filing occurred as a result of fraud committed by a party other than

the debtor).

Section 107 of the Bankruptcy Code, one of the sections relied upon by other courts as the source of authority to order expunction, is entitled "Public access to papers" and provides that a bankruptcy court may "protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." The word "defamatory" is not statutorily defined, but a defamatory statement has been defined elsewhere as a statement "tending to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business." Black's Law Dictionary 449 (8th ed. 2004). Similarly, a scandalous matter, as that phrase is used in Rule 12(f) of Federal Rules of Civil Procedure, is one that is both grossly disgraceful or defamatory and irrelevant to the action or defense. Black's Law Dictionary 1372 (8th ed. 2004). Arguably, the mere existence of a "false" bankruptcy filing can be defamatory, where there is evidence that the filing will harm the debtor's reputation or business.

Similarly, § 105 of the Bankruptcy Code, the other section relied upon by courts as authority to order expunction, permits a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." However, a court's equitable powers under § 105 "can only be exercised within the confines of the Bankruptcy Code." *In re Cajun Elec. Power Co-op, Inc.*, 185 F.3d 446, 453 n. 9 (5th Cir. 1999) (*citing* with approval *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993), which stated that the court may exercise its powers only as a means to fulfill some specific Code provision). An order under § 105 may be appropriate to implement §§ 301 through 303 of the Bankruptcy Code, which provide that bankruptcy relief is ordered only (i) where a petition in bankruptcy is *voluntary* or (ii) where it is filed by a petitioning creditor and is either uncontested or an evidentiary hearing is held. Here, the Petition was neither

**Memorandum Opinion and Order** 7

voluntary nor filed by a petitioning creditor.

While an interesting question, this Court need not identify the precise authority for expunction because the Court concludes that an alternative remedy should be fashioned here. The reasons for such an alternative remedy are discussed below.

First, expunction is "an extraordinary remedy." *In re Whitener*, 57 B.R. 707, 708 (Bankr. E.D. Va. 1986). And, in our electronic society, expunction may not "accord relief to" the Purported Debtor, 11 U.S.C. § 350, and it may not "protect" her from scandalous or defamatory matter. 11 U.S.C. § 107.[2] Bankruptcy pleadings "are public records and open to examination by an entity at reasonable times and without charge." 11 U.S.C. § 107(a). Once filed, the pleadings are immediately available to the general public on the Public Access to Court Electronic Records ("PACER") system. The credit reporting industry accesses the PACER records nationwide, systematically and daily, for its use in credit reporting. It is therefore highly likely that the existence of the Case has already been noted and documented by someone – somewhere – and this Court is simply powerless to "un-ring" that bell.

Moreover, expunging the Case at this point may make it *more* difficult for the Purported Debtor to convince the credit reporting agencies and prospective creditors that the filing was unauthorized, as the Case would be akin to an apparition – a creditor or credit reporting agency may have a notation that it had been filed, but would not have any way to access a case number or perform an electronic search to locate an explanation for its filing or locate an order declaring the filing to be

---

[2] General Order 2004-06 of the Bankruptcy Court for the Northern District of Texas provides that any person may move for an order limiting electronic access to court records where access is likely to prejudice the privacy interests of an affected party. *See* Gen. Ord. 2004-06 (V)(A)(2). The Court believes that limiting electronic access to the Case may be more likely to prejudice the Purported Debtor than allowing access, for the reasons set forth herein.

unauthorized.[3]

This anomaly can be prevented by fashioning alternative relief. Accordingly, the Court finds that the filing of the Case was unauthorized by Anita Elizabeth Dick and was filed fraudulently by Gary Oseroff. The Court directs the Clerk to create a "flag" which states "Unauthorized Bankruptcy Filing – Identity Theft Victim" and to associate that flag with the Case and make it publicly and prominently viewable whenever the Case information is electronically accessed. The Court also directs that the Clerk make the following docket entry for this Memorandum Opinion and Order: "Memorandum Opinion and Order re-opening the Case, finding that Anita Elizabeth Dick is an identity theft victim and did not authorize the filing of the Case, and granting other relief." The Debtor is authorized to forward copies of this Memorandum Opinion and Order to whomever she sees fit.

The Purported Debtor also asks that this Court authorize her to "respond in the negative if she should ever be asked, under oath or otherwise, whether she had ever filed for bankruptcy" *Mot. to Reopen/Expunge* ¶ 21. The Purported Debtor is already obligated to respond truthfully to questions under oath and this Court will not circumscribe or prospectively "bless" any future testimony, as that relief is unwarranted. Finally, the Purported Debtor asks this Court to direct any credit reporting agency which receives a copy of this Memorandum Opinion and Order to certify in writing that it (i) has deleted any reference to the Case and (ii) will not use the bankruptcy filing in compiling the Purported Debtor's credit rating or score or for any other purpose. The Court is unable to grant this relief as the Court lacks jurisdiction over the credit reporting agencies, since those

---

[3] The Court is also hesitant to order expunction, as its practical effect would be to destroy evidence of conduct which may be criminal.

entities were not served with the Motion to Re-Open/Expunge and are not properly before the Court.

For the foregoing reasons, it is

ORDERED that the Case is re-opened; and it is further

ORDERED that the Clerk take the action specified in this Memorandum Opinion and Order

within five days hereof; and it is further

ORDERED that the Case may be re-closed on or after the eleventh day from the date of entry

of this Memorandum Opinion and Order.

# # # END OF ORDER # # #